## CLAUDIUS B. LASELLE v. HOBOKEN FIRE INSURANCE COMPANY OF THE CITY OF HOBOKEN.

One of the conditions of a policy of insurance being that the policy should become void "if the dwelling-house should become vacant or unoccupied, and so *remain*"—*Held*, that a temporary cessation to occupy the dwelling-house, which did not continue until it was destroyed by the fire, did not avoid the contract. *Held further*, that the absence of the tenant who was then occupying the building as a dwelling-house, on the night of the fire, did not leave the building vacant or unoccupied within the sense of the contract.

Suit on policy of insurance.

The policy was dated April 17th, 1878, and the fire occurred on the 14th of October, 1879. One of the provisions of the policy was that, "if the dwelling-house insured should become vacant or unoccupied, and so remain, without notice to and consent of this company in writing, * * then, and in every such case, this policy is void." It was shown at the trial that the house in question was, during the summer and fall, occupied by the son of the assured, with the exception of a few weeks during which he was sick; the house was for such period entirely vacant. On his recovery, he again occupied the house, sleeping there, but taking his meals at a neigboring hotel. On the night before the fire he occupied the house as usual. On the night of the fire no one was in the house, the son having gone away for the night, intending to return the next day.

Argued at June Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, KNAPP and REED.

For the plaintiff, *Theodore Little.*

For the defendant, *F. C. Lowthorp, Jr.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. There were two questions started on the argument, both of them growing out of the clause in the policy of insurance which relates to the occupancy of the premises. It appeared at the trial that the son of the assured was in the occupation of this property, but that for several weeks, in consequence of his absence, from sickness, it was left, for the time, entirely unoccupied. The first point made by the defence was based on this circumstance, the contention being that, by such a vacancy of the house, the contract of insurance was at an end, and that no subsequent re-occupation of the premises could revive it. But this construction of the condition is not admissible; and it is plausible only by suppressing a portion of the language of the instrument. The policy does not declare that it is to be at an end in case the building insured shall become vacant, but, on the contrary, its language is, that it is to be void if such property insured should " become vacant or unoccupied, and so remain." Remain for what period unoccupied? I think, clearly, to the time of the fire. This is the reasonable construction, for it suspends the policy while the building is without an occupant, and thus the company is completely secured against such increase of risk as arises from that circumstance. The interpretation of this instrument, in this respect, by the trial judge, was correct.

So, also, I think, he properly construed this clause in its other aspect; for, the night of the fire, the building was unoccupied, in consequence of its occupant having gone away for the night, and the house was burned during such absence. It was insisted that this was a vacancy within the meaning of the condition in question. If this be so, then the party insured, if the only occupant of the premises, could not put his foot off such premises without leaving his buildings in an

uninsured condition. Such an interpretation of the clause is quite unreasonable. A dwelling-house does not become vacant or unoccupied, in the usual acceptation of such terms, when a tenant leaves it, in the ordinary course of things, for a few hours. A furnished abode would not, according to common usages, be called a vacant or unoccupied house, on account of a temporary absence of the tenant. When there is a cessation to use it as a dwelling, then it is properly styled a vacant house. It is, in the utmost degree, improbable that it was the understanding of these contracting parties that this property was to lose its insurance the moment and as often as the occupant left it to visit a neighbor or to attend to business. I am satisfied that the construction put upon this clause of the policy at the trial was the true one, and that it was proper to tell the jury, as was done, that, if they believed the tenant was occupying this house, and merely left it for the night, having no intention of giving it up as his place of abode, such absence would not operate a destruction of the contract.

The rule should be discharged.